**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JPMORGAN CHASE & CO., | ) | |
| JPMORGAN CHASE BANK, N.A., and | ) | |
| JPMORGAN CHASE ELECTRONIC | ) | |
| FINANCIAL SERVICES, INC., | ) | |
| | ) | C.A. No. 08-189-SLR |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AFFILIATED COMPUTER SERVICES, INC. and | ) | JURY TRIAL DEMANDED |
| ACS STATE & LOCAL SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ACS'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 7,317,823
OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OF INVALIDITY**

Collins J. Seitz, Jr. (Bar No. 2237)
Kevin F. Brady (Bar No. 2248)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street, P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
cseitz@cblh.com
kbrady@cblh.com

December 1, 2009

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

II.    ISSUES PRESENTED .................................................................................................. 4

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................... 6

IV.    THE   '823   PATENT   CREATES   EFFICIENCIES   BY
       PROCESSING DOCUMENTS AND CHECKS SEPARATELY ................................... 8

       A.     The Specification Teaches Overcoming Deficiencies in the
              Single Scanner Prior Art Systems Through a Parallel
              Processing System with Separate Document and Check
              Scanners ....................................................................................................... 8

       B.     The Claims Require a Processing System With Separate
              Document and Check Scanners Coupled to Separate
              Document and Check Memory ....................................................................... 12

V.     SUMMARY JUDGMENT OF NONINFRINGEMENT SHOULD
       BE GRANTED ............................................................................................................. 13

       A.     ACS's Single Scanner Systems Do Not Infringe the '823
              Patent Because They Do Not Use Separate Document and
              Check Scanners ........................................................................................... 14

              1.     The '823 Patent Requires Separate Document and
                     Check Scanners ................................................................................ 14

              2.     ACS's   Single   Scanner   Systems   Do   Not   Use
                     Separate Document and Check Scanners ............................................ 18

              3.     JPMorgan Attempts to Re-Capture Single Scanner
                     Systems Disclaimed in the Specification ............................................. 19

       B.     ACS's Single Scanner Systems Do Not Infringe the '823
              Patent Because These Systems Do Not Use Separate
              Document and Check Memory ....................................................................... 21

              1.     The   '823   Patent   Requires   Separate   Document
                     Memory and Check Memory .............................................................. 21

              2.     ACS's Single Scanner Systems Do Not Separately
                     Store the Check Images and Document Images ..................................... 27

C.    ACS's Accused Systems Do Not Infringe the '823 Patent Because They Do Not Associate the Check Number with the Documents ................................................................................. 28

     1.    The '823 Patent Requires Associating the Check Number with the Documents ................................................... 28

     2.    JPMorgan Offers No Evidence that ACS's Systems Associate the Check Number with the Documents ................................ 29

D.    ACS's Systems Do Not Infringe the '823 Patent Because They Do Not "Retrieve," "Store," and Associate on the Document Memory ...................................................................... 29

     1.    The '823 Patent Requires A Processor that "Retrieves," "Stores," and "Associates on the Document Capture Memory" .................................................. 29

     2.    JPMorgan Offers No Evidence that ACS Systems "Retrieve," "Store" and "Associate on the Document Capture Memory ................................................... 30

E.    Prosecution History Estoppel Forecloses Infringement Under the Doctrine of Equivalents ...................................... 31

VI.    IN THE ALTERNATIVE, THE '823 PATENT IS INVALID ..................................... 32

A.    Kern Discloses a Document Processor for Imaging Documents and Checks ........................................................ 33

B.    Kern Discloses a Storage and Retrieval Unit for Storing Images of Documents and Checks ........................................ 34

C.    Kern Discloses a Processor for Retrieving Images and Performing the Logical Association .................................... 35

D.    Dependent Claims 2-4 Are Also Invalidated By Kern ........................ 37

VII.    CONCLUSION .......................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...................................................................................................... 13

*Barmag v. Murata Mach., Ltd.,*
731 F.2d 831 (Fed. Cir. 1984) ...................................................................................... 13

*Becton Dickinson & Co. v. C.R. Bard, Inc.,*
922 F.2d 792 (Fed. Cir. 1990) ...................................................................................... 13

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ......................................................................................13, 14, 29, 30

*DeMarini Sports, Inc. v. Worth, Inc.,*
239 F.3d 1314 (Fed. Cir. 2001) .................................................................................... 13

*Edwards Lifesciences LLC v. Cook Inc.,*
No. 2009-1006, 2009 U.S. App. LEXIS 20906 (Fed. Cir. Sept. 22, 2009) ................... 20

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
493 F.3d 1368 (Fed. Cir. 2007) .................................................................................... 31

*Gaus v. Conair Corp.,*
363 F.3d 1284 (Fed. Cir. 2004) ....................................................................16, 22, 25, 26

*Honeywell Int'l, Inc. v. ITT Indus., Inc.,*
452 F.3d 1312 (Fed. Cir. 2006) .................................................................................... 20

*KSR Int'l Co. v. Teleflex Inc.,*
550 U.S. 398 (2007) ................................................................................................. 38, 39

*Netword, LLC v. Centraal Corp.,*
242 F.3d 1347 (Fed. Cir. 2001) ............................................................................ 13, 18, 27

*RFID Tracker, Ltd. v. Wal-Mart Stores, Inc.,*
No. 2008-1412, 2009 WL 2502792 (Fed. Cir. Aug. 18, 2009) ............................................ 29

**STATUTES**

35 U.S.C. § 102(e) ............................................................................................................ 8, 32

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(a) ........................................................................................................ 13

iii

**TABLE OF EXHIBITS**

Ex. 1          U.S. Patent No. 7,317,823 (JPMC-ACS-00203385-96; JA00072-083)

Ex. 2          Declaration of John Kynch

Ex. 3          Declaration of Wes Branstetter

Ex. 4          Declaration of Anthony Derasmo

Ex. 5          Appeal Brief filed in File History of Parent Application of '823 Patent dated
               11/15/2004 (JPMC-ACS-02052404-23; JA02084-103)

Ex. 6          Office Action filed in File History of Parent Application of '823 Patent dated
               10/17/2005 (JPMC-ACS-02052944-54; JA02624-34)

Ex. 7          Office Action filed in File History of '823 Patent dated 8/1/2007 (JPMC-ACS-
               00454776-794; JA01890-908)

Ex. 8          OPEX AS3690i All-In-One-Mail Capture System (ACS01004361-364)

Ex. 9          Exhibit C to JPMorgan's Disclosure of Asserted Claims and Infringement
               Contentions in Response to ACS's Interrogatory Nos. 7-8

Ex. 10         Exhibit BB to JPMorgan's Disclosure of Asserted Claims and Infringement
               Contentions in Response to ACS's Interrogatory Nos. 7-8

Ex. 11         Exhibit CC to JPMorgan's Disclosure of Asserted Claims and Infringement
               Contentions in Response to ACS's Interrogatory Nos. 7-8

Ex. 12         U.S. Patent No. 5,874,717

Ex. 13         Amendment in Response to Non-Final Office action filed File History of Parent
               Application of '823 Patent dated 8/28/2003(JPMC-ACS-02052366-80; JA02046-
               60)

Ex. 14         Declaration of Alex Smith

Ex. 15         Declaration of David Kenney

Pursuant to the Court's Scheduling Order, Defendants Affiliated Computer Services, Inc. and ACS State & Local Solutions, Inc., (collectively, "ACS") respectfully submit this Motion for Summary Judgment of Non-infringement of United States Patent No. 7,317,823 ("the '823 patent").

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

The '823 patent discloses a "Lockbox Imaging System." (Ex. 1 (the '823 patent) at 1:1.) As the patent's specification explains, lockbox systems are employed by entities—such as, for example, telephone companies—"that receive a large number of negotiable instruments, for example checks, and other documents associated with the negotiable instruments such as invoices." (*Id.* at 1:23-27.) Earlier lockbox systems gathered information related to the check payment and associated an image of the check together with its respective invoice and other related documents. But according to the '823 patent, these systems were inefficient because they used a single scanner to capture the image of the related documents together with the check. Then after imaging, the check would be separated for conventional financial processing. In contrast to these earlier systems, the '823 patent teaches a lockbox system in which the check is scanned "[i]n parallel to the scanning of the documents" in order to eliminate redundancies and improve efficiency. (Ex. 1 at Abstract; 5:17-19.) To achieve this efficiency, the invention employs separate document and check scanners, along with separate document and check memory for storing images and data.

Notwithstanding this critical feature of the invention at issue, JPMorgan has accused ACS's lockbox processing systems of infringing the '823 patent based on their use of a single scanner for imaging documents <u>and</u> checks serially. (*See* Ex. 9 (JPMorgan's SDU infringement contentions) at 2, 3 (identifying the OPEX series scanner

as the document capture component and check capture component).)  In addition, ACS's "Single Scanner Systems" are connected to one memory that stores the documents <u>and</u> checks together.  ACS's accused systems do not store check images and document images separately in memory, as required by the '823 patent.  Summary judgment of noninfringement is therefore appropriate on these grounds.  In particular, as will be shown in this motion:

1.      ACS's Single Scanner Systems cannot satisfy the claim limitations requiring separate document and check scanners.  Claim 1, the specification, and the prosecution history of the '823 patent all require a claim construction consistent with the invention—that is, a system that utilizes separate document and check scanners to overcome the deficiencies in the prior art.  ACS utilizes a single scanner in nearly every one of its lockbox processing systems.  As a matter of law, these Single Scanner Systems cannot infringe claims 1-4 of the '823 patent.

2.      ACS's Single Scanner Systems also cannot satisfy the claim limitations requiring a document capture memory to store document images, and a separate check capture memory to store check images, until the two images are subsequently associated.  The terms of claim 1 make clear that the document capture memory is separate from the check capture memory.  In particular, claim 1 requires:

- "retrieving" the check images <u>from the check capture memory</u>

- "storing" the check images <u>in the document capture memory</u>, and then

- "associating" the document images and check images <u>on the document capture memory</u>.

The patent's specification and prosecution history further demonstrate that the document capture memory and the check capture memory are separate, and cannot be the same

thing.  ACS stores document and check images together on a memory device.  ACS does not separate the check images and document images on a "document" memory and a "check" memory, as would be required to perform the retrieve-store-associate steps.  As a matter of law, such systems cannot infringe claims 1-4 of the '823 patent.

3.     The applicants for the '823 patent also disclaimed any systems that do not associate the documents with the check number.  But JPMorgan has failed to identify any evidence that ACS's Single Scanner Systems associate the documents with the check number.  As a matter of law, therefore, ACS's systems cannot infringe claims 1-4 of the '823 patent on this ground as well.

4.     JPMorgan has also offered no evidence that the ACS systems "retrieve," "store" and "associate on the document memory" as required by claim 1 of the '823 patent.  JPMorgan's sole contention to date is that "one of skill in the art would expect" the ACS systems to perform these steps.  (Ex. 9 (JPMorgan's SDU infringement contentions) at 5.)  But JPMorgan admits that "the expectation of a person of ordinary skill in the art is an insufficient basis upon which to pursue an infringement claim" and notes that its own infringement contentions use "unfortunate language."  (Discovery Conference of 10/5/2009 at 10.)  Given that JPMorgan offers no evidence that ACS's systems satisfy limitations [f] and [g] of claim 1, summary judgment of noninfringement is appropriate.

5.     As discussed above, the Court should grant summary judgment of noninfringement on the grounds that claims 1-4 of the '823 patent cannot be read to cover single scanner implementations like the ACS systems at issue.  But should JPMorgan manage to convince the Court otherwise, then those claims of the '823 patent are invalid

as anticipated by the prior art.  Indeed, while JPMorgan would have the Court disregard the intrinsic evidence and hold that the '823 patent covers lockbox systems using a single scanner, the patent's specification acknowledges that such systems are prior art.  In particular, if JPMorgan's infringement arguments have merit, then the cited Kern reference—which discloses a single scanner for imaging documents and checks— anticipates and invalidates claims 1-4 of the '823 patent.

## II.    ISSUES PRESENTED

JPMorgan contends that the majority of ACS's systems infringe the '823 patent based on their use of a single scanner for imaging documents <u>and</u> checks serially (these systems are collectively referred to as the "Single Scanner Systems").[1]   (Ex. 9-11 (JPMorgan's infringement contentions).)  JPMorgan further contends that these system infringe based on their storage of the images of the checks and documents together in a single memory device.   Given these facts, the following issues are presented for resolution by the Court:

1.      Whether summary judgment of noninfringement of claims 1-4 of the '823 patent should be granted on the Single Scanner Systems when there is no genuine issue

---

[1] Two of ACS's systems use (or used) two separate scanners:  ACS's Aetna (AIM) system and its Dallas TX Photo and Parking system.  ACS does not move for summary judgment on these systems with respect to issues 1 and 2.  Furthermore, ACS uses proprietary third-party software for the NJ EZ-Pass system, so ACS's motion for this system on issue 2 is limited to JPMorgan's failure to provide evidence that the NJ EZ-Pass system satisfies the limitations requiring a document capture memory and check capture memory.  ACS also notes that some of the ACS Single Scanner Systems may use additional scanners in the system architecture, but in all cases JPMorgan's allegations are based on the use of a single scanner.

that these systems do not practice, either literally or under the doctrine of equivalents, the following limitations of claim 1 requiring separate document and check scanners:[2]

> [a]    <u>a document capture component</u>, the document capture component scanning the at least one document thereby generating a document image, the document capture component further generating a document data record that identifies the at least one document;

> [c]    <u>a check capture component</u>, the check capture component scanning the check thereby generating a check image, the check capture component further generating a check data record that identifies the check.

2.    Whether summary judgment of noninfringement of claims 1-4 of the '823 patent should be granted on the Single Scanner Systems when there is no genuine issue that ACS's Single Scanner Systems do not practice, either literally or under the doctrine of equivalents, the following limitations of claim 1 requiring separate "document" and "check" memory:

> [b]    <u>a document capture memory</u> coupled to the document capture component and storing the document image and the document data record;

> [d]    <u>a check capture memory</u> coupled to the check capture component and storing the check image and the check data record; and

> [f]    wherein the processor further <u>retrieves</u> the check image and the check data record <u>from</u> the <u>check capture memory</u> and <u>stores</u> the check image and the check data record in the <u>document capture memory</u>, and

> [g]    wherein the <u>logical association</u> is performed on the <u>document capture memory</u>.

3.    Whether summary judgment of noninfringement of claims 1-4 of the '823 patent should be granted on ACS's lockbox systems when JPMorgan has failed to

---

[2] Bracketed numerals are added to the individual limitations of claim 1 throughout the brief for ease of reference.

identify any evidence, either literally or under the doctrine of equivalents, that the accused systems associate the documents with the check number.

4.      Whether summary judgment of noninfringement of claims 1-4 of the '823 patent should be granted on the accused systems when JPMorgan has failed to identify any evidence, either literally or under the doctrine of equivalents, that ACS's systems "retrieve from the check capture memory," "store in the document capture memory," and "associate on the document memory."

5.      Whether summary judgment of invalidity of claims 1-4 of the '823 patent should be granted in the unlikely event that the Court construes the claims to require only a single scanner and single memory.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Limitation [a] of claim 1 of the '823 patent requires "a document capture component, the document capture component scanning the at least one document thereby generating a document image, the document capture component further generating a document data record that identifies the at least one document." (Ex. 1 ('823 patent) at 8:1-5.)

2.      Limitation [c] of claim 1 of the '823 patent further requires "a check capture component, the check capture component scanning the check thereby generating a check image, the check capture component further generating a check data record that identifies the check." (*Id.* at 8:9-12.)

6.      Limitation [b] of claim 1 of the '823 patent requires "a document capture memory coupled to the document capture component and storing the document image and the document data record." (*Id.* at 8:6-8.)

7.      Limitation [d] of claim 1 of the '823 patent requires "a check capture memory coupled to the check capture component and storing the check image and the check data record." (*Id.* at 8:13-15.)

8.      Limitation [f] of claim 1 of the '823 patent requires, in part, "retriev[ing] the check image and the check data record from the check capture memory and stores the check image and the check data record in the document capture memory." (*Id.* at 8:20-23.)

9.      Limitation [g] of claim 1 of the '823 patent requires "perform[ing]" the logical association "on the document capture memory." (*Id.* at 8:23-25.)

10.     ACS's Single Scanner Systems may be logically broken down into three groups by the scanner used for imaging checks and documents:

- the "OPEX Systems," which include the state disbursement unit ("SDU"),[3] NY EZ-Pass, DHL, and Allegheny County PA Judicial Collections systems;

- the "Kodak Systems," which include the Aetna (claims), Cigna, Coventry, MetLife and Great West systems

- the "Other Systems," which include the NJ EZ-Pass (Unisys scanner), Detroit MI Parking (Panini scanner), Philadelphia PA Parking (Canon scanner), Dallas Photo & Parking (Bell & Howell scanner) and Montgomery County MD Photo (Bell & Howell scanner) systems

(Ex. 2 (Kynch Declaration) at ¶ 4; Ex. 3 (Branstetter Declaration) at ¶ 4-6; Ex. 4 (Derasmo Declaration) at ¶ 4-7; Ex. 14 (Smith Declaration) at ¶ 4, 5; Ex. 15 (Kenney Declaration) at ¶ 4.)

---

[3] The Florida SDU occasionally uses a Kleindienst scanner but generally uses an OPEX scanner.

11.     JPMorgan contends that these systems infringe based on their use of a single scanner to image checks and documents.  (Ex. 9, Ex. 10, Ex. 11 (JPMorgan's infringement contentions).)[4]

12.     ACS's Single Scanner Systems store the scanned images of the checks and documents together in a single memory device.  The images of the checks and documents from the accused scanner are not stored separately in different memory devices.[5]  (Ex. 2 (Kynch Declaration) at ¶ 5; Ex. 3 (Branstetter Declaration) at ¶ 7; Ex. 4 (Derasmo Declaration) at ¶ 8; Ex. 14 (Smith Declaration) at ¶ 7.)

13.     U.S. Patent No. 5,874,717 to Kern et. al. ("the Kern patent") is prior art to the '823 patent under 35 U.S.C. § 102(e).  (Ex. 12 (Kern patent).)

## IV.   THE '823 PATENT CREATES EFFICIENCIES BY PROCESSING DOCUMENTS AND CHECKS SEPARATELY

### A.   The Specification Teaches Overcoming Deficiencies in the Single Scanner Prior Art Systems Through a Parallel Processing System with Separate Document and Check Scanners

Lockbox processing is employed by companies that receive a large number of checks as payment along with other documents associated with the checks, such as invoices.  An example of a company that makes use of lockbox processing would be a telephone company that mails out a large number of invoices and receives payment from its customers via checks.  (Ex. 1 ('823 patent) at 1:23-30.)  Lockbox processing requires gathering information related to the check payment, such as the remitter name, check

---

[4] As noted above, the Aetna (AIM) and Dallas TX Photo & Parking systems use (or used) two separate scanners.  Accordingly, this statement does not apply to those systems.

[5] As noted above, the NJ EZ-Pass System uses proprietary third-party software, so this statement does not apply to the NJ EZ-Pass system.  However, JPMorgan has failed to provide any evidence that the NJ EZ-Pass system stores document images in a "document capture memory" and check images in a "check capture memory."

number, bank number, routing number, payment amount, etc.   This information is typically gathered and stored in a computer database.  In addition to the data associated with a check, lockbox processing also requires providing an image of the check.  "[T]he informational data associated with the check and the image of the check are cross referenced such that the data and the check image can be simultaneously retrieved and reviewed. Such check imaging capability is well known in the art." (*Id.* at 1:55-59.)

The '823 patent criticizes prior art lockbox systems that serially imaged the checks and their associated documents, explaining that

> [s]ome prior art systems have attempted to image the checks and the documents received in an envelope in a lockbox processing center.  One such system placed the check and its associated documents on a conveyer belt type arrangement for imaging.  Such a system is not suitable for a high volume lockbox processing center since the checks must again be separately processed by the conventional financial processing systems.  The redundancies therefore induced by this prior art system are not acceptable for any high volume processing center.

(*Id.* at 1:60-2:2.)  The '823 patent thus teaches an allegedly more efficient system than the prior art "conveyor belt type arrangement" using a single scanner.  Rather than scanning the checks and documents serially using one scanner, the claimed invention scans the checks "[i]n parallel to the scanning of the documents" to eliminate redundancies and improve processing efficiency.  (*Id.* at Abstract; 5:17-19 (emphasis added).)  JPMorgan improperly attempts to re-capture the prior art "conveyor belt type arrangement" disclaimed by the applicants and utilized by ACS.

The Abstract summarizes the invention as a system for imaging documents and checks contained in a lockbox remittance wherein

> [i]n parallel to the scanning of the documents, the checks are scanned and images are created for each of the checks.  Additionally, identifying information from each of the checks (e.g., the check number, the amount, etc.) is manually input into a database, thus creating a data record for each

check.  Once all of the data entry and scanning has been completed, an automatic association process takes place in which the check data records, the check images, the document data records and the document images are all automatically associated and cross-referenced such that the system recreates an electronic version of the original batch of physical papers.

(*Id.* at Abstract (emphasis added).)

"FIG. 1 illustrates the system of the present invention"—a dual-path processing system for separately imaging checks and documents:[6]

---

[6] Figure 1 as shown on the following page is enhanced with additional color, white spacing, and labels to illustrate particular aspects of the invention, but the substance of the figure is unchanged.



As shown in Figure 1, the documents 110 are scanned using document scanner 125 and stored in document capture memory 130.  (*Id.* at 3:27-28, 4:6-14.)  In parallel, checks 105 are scanned using check scanner 155 and stored in the check capture memory 165.  (*Id.* at Abstract, 5:17-31.)    An operator manually creates a document data record using workstation 160 and a check data record using workstation 145.  (*Id.* at 2:40-49, 5:32-35, 40-41.)

**B.     The Claims Require a Processing System With Separate Document and Check Scanners Coupled to Separate Document and Check Memory**

Claim 1 of the '823 patent covers a lockbox processing system with a separate "document capture component" and "check capture component."  Furthermore, claim 1 requires a separate "document capture memory" and "check capture memory."  Claim 1 reads as follows, with labels [a]-[g] added for ease of reference:

A lockbox processing system for processing lockbox remittances, the lockbox remittances comprising a check and at least one document associated with the check, the check and at least one document forming a group, the check having a check number associated therewith, the system comprising:

[a]     a document capture component, the document capture component scanning the at least one document thereby generating a document image, the document capture component further generating a document data record that identifies the at least one document;

[b]     a document capture memory coupled to the document capture component and storing the document image and the document data record;

[c]     a check capture component, the check capture component scanning the check thereby generating a check image, the check capture component further generating a check data record that identifies the check;

[d]     a check capture memory coupled to the check capture component and storing the check image and the check data record; and

[e]     a processor coupled to the <u>check capture memory</u> and the
        <u>document capture memory</u>, the processor logically associating
        the check data record, the document data record, the check image
        and the document image;

[f]     wherein the processor further retrieves the check image and the
        check data record from the <u>check capture memory</u> and stores the
        check image and the check data record in the <u>document capture
        memory</u>, and

[g]     wherein the logical association is performed on the <u>document
        capture memory</u>.

(Ex. 1 ('823 patent) at 7:40-8:25 (emphasis added).)

## V.     SUMMARY JUDGMENT OF NONINFRINGEMENT SHOULD BE GRANTED

The "[s]ummary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as whole, which

are designed to secure the just, speedy and inexpensive determination of every action."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Summary judgment is as appropriate

in a patent case as in any other." *Barmag v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed.

Cir. 1984).

Summary judgment should be granted when there is no genuine issue of material

fact and judgment as a matter of law is appropriate. FED. R. CIV. P. 56(a); *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The court's construction of the claims

often decides the question of infringement, whether literal or under the doctrine of

equivalents." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1350 (Fed. Cir. 2001).

Literal infringement of a claim occurs only "when every limitation recited in the claim

appears in the accused device, *i.e.*, when 'the properly construed claim reads on the

accused device exactly.'"  *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330

(Fed. Cir. 2001); *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir.

1990) ("To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent.").

To establish that summary judgment is warranted, where the moving party does not bear the ultimate burden of persuasion at trial, it can either affirmatively negate the nonmovant's claim by providing affidavits, depositions or other evidence, or it can simply point out a lack of evidence for the other party on an essential element of that party's claim. *Celotex*, 477 U.S. at 325.

## A. ACS's Single Scanner Systems Do Not Infringe the '823 Patent Because They Do Not Use Separate Document and Check Scanners

### 1. The '823 Patent Requires Separate Document and Check Scanners

ACS's Opening Claim Construction Brief demonstrated that the "document capture component" and "check capture component" limitations of claim 1 require separate document and check scanners. (ACS's Opening Claim Construction Brief (D.I. 403) at 5-12.) A claim construction that requires a separate document and check scanner is the only construction consistent with "the words of the claims themselves, the remainder of the specification [and] the prosecution history". *See Phillips*, 415 F.3d at 1315 (internal citation and quotation marks omitted).

Claim 1 is explicit in requiring both a document capture component and a check capture component:

[a]   a document capture component, the document capture component scanning the at least one document thereby generating a document image, the document capture component further generating a document data record that identifies the at least one document; . . .

[c]   a check capture component, the check capture component scanning the check thereby generating a check image, the check capture component further generating a check data record that identifies the check;

(Ex. 1 ('823 patent) at 8:1-5, 9-12.)  The '823 specification further illustrates that the "document capture component" and "check capture component" are two separate devices.  "FIG. 1 illustrates the system of the present invention" showing the document scanner portion of the document capture component as 125 and the check scanner portion of the check capture component as 155.  The document capture component receives documents 110 and the check capture component receives checks 105.

The '823 specification teaches that the invention employs separate check processing and document processing portions.  (Ex. 1 ('823 patent) at 4:2-5 ("the checks 105 may be separated from their associated documents 110 and sent to the check processing portion of the system of the present invention").)  The specification further explains the operation of the separate document processing and check processing of the invention occurs in parallel:

When the stack of documents 110 separated by header sheets 120 for each of the groups 102 have been assembled, they are ready for scanning using an optical scanner 125.  In a preferred embodiment of the present invention, scanner 125 is a high speed scanner such as those available from Bell & Howell™.  The output of scanner 125 are image files representative of the header page 120 and the documents 110.  The image files are stored on the image file server 140 in the Document Capture memory 130.

***

In parallel with the above described scanning process of documents 110, the checks 105 from each of the groups 102 are processed.  Checks 105 are processed similar to the



> processing of documents 110…. In addition to capturing the data from the
> check, each check 105 is imaged using scanner 155.  The check images
> are then stored on an image file server 175 and the check images are
> linked to their respective check data record in database 170.

(*Id.* at 4:6-14, 5:17-31 (emphasis added).)  As illustrated and described, the parallel

operation of "the present invention" requires separate document capture and check

capture components.

Moreover, "the specification describes one of the principal advantages of the

claimed invention in a way that excludes" a system in which both the document capture

component and the check capture component are embodied in a single scanner that

serially images both documents and checks.  *See Gaus v. Conair Corp.*, 363 F.3d 1284,

1289 (Fed. Cir. 2004).  The '823 specification teaches that systems using a single

"conveyer belt type" scanner for imaging check and documents are "not suitable for a

high volume lock box processing center since the checks must again be separately

processed by the conventional financial processing systems.  The redundancies therefore

induced by this prior art system are not acceptable for any high volume processing

center."   (Ex. 1 ('823 patent) at 1:64-2:2.)   JPMorgan's proposed single-scanner

construction of the claims at issue—which would induce the alleged "redundancies" the

'823 patent was intended to exclude—is thus foreclosed by the specification.  *See Gaus*,

363 at 1289.   As such, the document capture component and the check capture

component of the '823 patent must be embodied in separate scanners.

If any doubt remained on this point, it is dispelled by the patent's prosecution

history.   The applicants for the '823 patent described the overall operation of the

invention in the "Summary of Claimed Subject Matter" section of their Appeal Brief to

the USPTO during prosecution.  As they explained, "[t]here are substantially five steps in the processing operation":

- First, …the check and its associated documents can be <u>separated</u>.

- Second, …each of the documents in the batch, including the header sheet, is scanned 125.  The scanned images are stored on an image file server 140.

- Third, either before or after the documents are scanned, identifying information from each of the documents…is manually input into a database 170, to create a data record for each document.

- Fourth, <u>concurrent</u> with the scanning of the documents, the checks are scanned and images 525 are created for each of the checks.

- Finally, identifying information from each of the checks (e.g., the check number, the amount, etc.) is input into a database, thus creating a data record for each check.

(*See* Ex. 5 (Appeal Brief dated 11/15/2004) at 4-5 (emphasis added).)  In other words, consistent with the patent's specification, the applicants explained that the invention uses two scanners to image the documents and checks separately and in parallel.

The examiner also understood the separation between the document capture and check capture components of the invention.  In the parent application, the applicants attempted to claim a check capture component that generates a document data record. The examiner rejected the claim as indefinite, explaining that "[t]he claim limitation of 'a check scanner that generates the check image; and a <u>check</u> workstation that generates the <u>document</u> data record' is unclear.  <u>It is understood by the examiner, the document data record is generated by the document capture component, rather than a check capture component.</u>"  (Ex. 6 (Office Action dated 10/17/2005) at 3 (emphasis added).)  In other words, the examiner understood the document capture component and check capture component as two separate components performing different functions.  If JPMorgan were permitted to draw its "check capture component" and "document capture

component" boxes around the same scanner, the component JPMorgan identifies as the "check capture component" would be creating "document data records"—precisely what the examiner said could not happen.

In summary, the claim language, specification, and prosecution history of the '823 patent all lead to the same conclusion:  the document capture component and the check capture component must be embodied in separate scanners.

### 2.    ACS's Single Scanner Systems Do Not Use Separate Document and Check Scanners

JPMorgan accuses ACS's Single Scanner Systems of infringing the claims of the '823 patent accused based on their use of a single scanner.[7]  Given that "[t]he court's construction of the claims often decides the question of infringement, whether literal or under the doctrine of equivalents," under the proper claim construction, there is no dispute that the ACS Single Scanner Systems do not practice claim 1 of the '823 patent. *See Netword*, 242 F.3d at 1350.  In this case, JPMorgan cannot dispute that, if the Court construes claim 1 to require separate document and check scanners, ACS's Single

---

[7] Specifically, JPMorgan's accusations related to ACS's SDU, NY EZ-Pass, and DHL systems are based on the use of a single OPEX 3600 series scanner to image checks and documents.  (*See, e.g.,* Ex. 9 (JPMorgan's SDU infringement contentions) at 2, 3 (identifying the OPEX series scanner as the document capture component and check capture component).)   JPMorgan's accusations related to ACS's Cigna, Coventry, MetLife and Great West systems are based on the use of a single Kodak scanner to image checks and documents.  JPMorgan's accusations related to ACS's AXA system are based on the use of a single Kodak scanner to image checks and documents.  (*See, e.g.*, Ex. 10 (JPMorgan's AXA infringement contentions) at 1.)   JPMorgan's accusations related to ACS's other systems including the Allegheny County PA Judicial Collections (OPEX scanner), Detroit MI Parking (Panini scanner), Philadelphia PA Parking (Canon scanner), Montgomery County MD Photo (Bell & Howell scanner) and Dallas Photo & Parking (Bell & Howell scanner) systems are also based on the use a single scanner to image checks and documents.  (No infringement contentions provided.)

Scanner Systems do not practice the limitations of claim 1 either literally or under the doctrine of equivalents.

### 3.  JPMorgan Attempts to Re-Capture Single Scanner Systems Disclaimed in the Specification

The specification disclaims lockbox systems—such as ACS's Single Scanner Systems—that attempt "to image checks and documents" on a single scanner such as "conveyor belt type arrangement."  (Ex. 1 ('823 patent) at 1:60-2:18.)  The specification teaches that separate processing of the documents and checks "overcome[s] the deficiencies" of prior art systems.  (*Id.* at 1:60-2:18.)

In more detail, the specification explains the problem with the prior art systems that scanned the documents and checks together on a conveyer belt type system:

> Some prior art systems have attempted to image the checks and the documents received in an envelope in a lockbox processing center.  One such system placed the check and its associated documents on a conveyer belt type arrangement for imaging.  <u>Such a system is not suitable for a high volume lock box processing center since the checks must again be separately processed by the conventional financial processing systems.</u>  The redundancies therefore induced by this prior art system are not acceptable for any high volume processing center.

(*Id.* at 1:60-2:2 (emphasis added).)   The specification teaches "overcome[ing] the deficiencies of the prior art" with "the present invention[.]"   (*Id.* at 2:13-14.) Accordingly, the applicants for the '823 patent disclaimed "conveyor belt type" systems in which the documents and checks are scanned together and the checks are then separately processed by the conventional financial processing system.  The specification does not merely describe this as a benefit of one embodiment, but rather explains that

"the present invention"[8] overcomes the deficiency in the prior art that required separate processing of the check by the conventional financial processing system.[9]  (*Id.* at 2:13-14.)  JPMorgan improperly attempts to re-capture these disclaimed systems.

In particular, the OPEX scanner constitutes a "conveyor belt type arrangement" disclaimed in the '823 patent.  The picture of the OPEX 3690i scanner below illustrates the conveyor belt arrangement ACS uses to scan documents and checks:

**Conveyor belt type arrangement**



---

[8] *See Edwards Lifesciences LLC v. Cook Inc.*, No. 2009-1006, 2009 U.S. App. LEXIS 20906, at *18 (Fed. Cir. Sept. 22, 2009) (holding that "'when the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment'" and finding an "intent to limit the invention to intraluminal devices" given that "the specification frequently describes an 'intraluminal graft' as 'the present invention' or 'this invention'") (*quoting Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1379 (Fed. Cir. 2005)); *see also Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (construing claim term to include fuel filter because "[o]n at least four occasions, the written description refers to the fuel filter as 'this invention' or 'the present invention'").

[9] JPMorgan argues that the specification teaches that the operations of the invention can take place in various sequences.  Not true.  The specification only teaches that the scanning and data entry sequence can be reversed—not that the scanning itself need not be in parallel on two separate devices.

(Ex. 8 (OPEX AS3690i All-In-One-Mail Capture System) at 3.)   Users of the OPEX scanner "[s]imply load mail onto the extraction desk and drop the extracted documents onto the <u>conveyor</u>.  The AS3690i will then capture, process, sort and output contents and data." (*Id.* at 2 (emphasis added).)  The OPEX conveyor belt arrangement is the same system the '823 patent describes as inefficient because it scans checks and documents serially.   JPMorgan's attempt to re-capture this system should be rejected, and partial summary judgment of noninfringement should be granted on this ground.

**B.**   **ACS's Single Scanner Systems Do Not Infringe the '823 Patent Because These Systems Do Not Use Separate Document and Check Memory**

**1.**   **The '823 Patent Requires Separate Document Memory and Check Memory**

The claim language, specification, and prosecution history are all in accord:  the "document capture memory" and "check capture memory" are separate memory devices for storing documents and checks respectively.   ACS's construction is again consistent with the principles taught in *Phillips*—consistent with the entire intrinsic record.

Claim 1 is again explicit in requiring both a document capture memory and a check capture memory:

> [b]   <u>a document capture memory</u> coupled to the document capture component and storing the document image and the document data record; . . .

> [d]   <u>a check capture memory</u> coupled to the check capture component and storing the check image and the check data record; and . . . .

(Ex. 1 ('823 patent) at 8:6-8, 13-15 (emphasis added).)  Claim 1 recites both a "document capture memory" and a "check capture memory"—the claim does not recite a single memory for storing images of documents and checks.

The claim language further illustrates the separateness of the "document capture memory" and "check capture memory" by requiring that the check images are <u>retrieved from</u> the check capture memory and <u>stored in</u> the document capture memory.  This retrieval process is necessary because the claimed system requires that:  1) the check images are retrieved from the <u>check capture memory</u>; 2) the check images are then joined in the same memory device as the documents in the <u>document capture memory</u>; and 3) the logical association of the check images and document images is then performed on the <u>document capture memory</u>:

> [f]  wherein the processor further retrieves the check image and the check data record from the <u>check capture memory</u> and stores the check image and the check data record in the <u>document capture memory</u>, and
>
> [g]  wherein the logical association is performed on the <u>document capture memory</u>.

(*Id.* at 8:20-25 (emphasis added).)

In order for the processor to "retrieve" the check images from the check memory and store the check images in the document memory, the documents and checks must be separated in two different memory devices—a document memory and check memory. Moreover, the claim limitation differentiates between performing the logical association process "on the document capture memory" as opposed to the check capture memory. JPMorgan would read out of the claims the words "document" and "check."  Again, "the clear implication of the claim language is that" the documents and checks are stored separately in distinct memory devices until the check images are "retrieved" from the check memory and stored in the document memory.  *See Gaus*, 363 F.3d at 1288.

Consider an analogous claim that required:  1) a "document" bucket and a "check" bucket; 2) retrieving the checks from the check bucket and storing them in the

document bucket; and 3) banding the checks and documents together in the check bucket. Could this claim be satisfied if the documents and checks were stored together in one bucket at all times?  No.  The checks would need to be stored in the check bucket, retrieved from the check bucket, and then stored in the document bucket.  JPMorgan's unreasonable suggestion that such a claim could be satisfied with a single check-and-document bucket should be rejected; ACS's construction is correct based solely on the claim language and should be adopted.

The '823 patent's specification further illustrates that the "document capture memory" and "check capture memory" are two separate memory devices storing the documents and checks separately until the processor performs the retrieval-store-association steps.  As shown in Figure 1, the document capture memory is 130, and the check capture memory is 165.  The specification explains the purpose of the separate document capture memory and check capture memory:

The output of scanner 125 are image files representative of the header page 120 and the documents 110. The image files are stored on the image file server 140 in the <u>Document Capture memory 130</u>…. In an alternative embodiment of the present invention,[10] the workstation 160 is coupled to the document capture memory 130, and the data from documents 110 is inputted into database 135.

\*\*\*

Workstation 145 is used to capture the data from each check 105 for inclusion in database 170 in the <u>check capture memory 165</u>…. The check images are then stored on an image file server 175 and the check images are linked to their respective check data record in database 170.



(Ex. 1 ('823 patent) at 4:11-14, 5:43-46, 5:20-31 (emphasis added).)

Consistent with Figure 1, the written specification describes the memory components as two separate memory devices—one for document images and data and another for check images and data. JPMorgan's argument that the specification discloses that document data records may be stored in the same database as check data records is not to the contrary. While the specification suggests that the document data records may be temporarily stored in the check capture memory, the specification and claims require

---

[10] Claim 1 covers this alternative embodiment as the claim requires "a document capture memory coupled to the document capture component and storing the document image <u>and the document data record</u>". (Ex. 1 ('823 patent) at 8:6-8 (emphasis added).)

that the check images and check data records are "retrieved" from the check memory, stored in the document memory, and associated with the document images and document data records in the document capture memory—thereby necessitating both a check capture memory and a document capture memory separately storing the check images and document images until the processor performs the retrieval step.

In other words, as required by claim 1, processor 180 performs the steps of:

1)   <u>retrieving</u> the check image and the check data record from the check capture memory,

2)   <u>storing</u> the check image and the check data record in the document capture memory, and

3)   <u>performing</u> the logical association on the document capture memory.

(*See id.* at 8:20-26 (claim 1).)   The specification explains that the retrieval step is performed by importing the check images into the document memory:

> [P]rocessor 180 is further used to import the check and document data and the check images from the check capture memory 165 into the document capture memory 130 so that the all of the data records (both check and document) and images (checks) for each group 102 can be associated and cross referenced.   In performing this operation, processor 180 continuously parses the directories of the check capture memory 165 in order to detect any new or updated files.   If such files are detected, processor 180 <u>imports the files from check capture memory 165 into document capture memory 130</u>.

(*Id.* at 5:48-58 (emphasis added).)   This process of importing the check images moves the check images files from the check memory to the separate document memory.   If, as JPMorgan apparently contends, the document memory and check memory could be the same memory device, no importation would be possible.

In sum, nothing in the descriptions of the document capture memory and the check capture memory in the '823 patent "suggests that their structures or functions

overlap." *See Gaus*, 363 F.3d at 1288.   To the contrary, the specification—and in particular "the present invention" depicted in Figure 1—plainly describes the two memory devices as separately storing the check images and document images until the retrieval-store-association steps are performed.  *See id*.

The prosecution history further demonstrates that the invention requires separate document and check memories.  The "wherein" limitations requiring separate document memory and check memory, along with the retrieving, storing, and associating steps, provided the sole distinction over the prior art for the examiner.  The examiner rejected claim 27 (as filed) that included every limitation of issued claim 1 except the "wherein" limitations.  The examiner found that claim 27 was anticipated by the prior art.  The examiner allowed claim 31 (as filed)—a dependent claim adding the "wherein" limitations—if the applicants re-wrote the claim as an independent claim.  The examiner explained his reasons for allowing the claim:

> Claim 31 calls for the processor retrieves the check image and the check data record from the check capture memory and stores the check image and the check data record in the document capture memory, and wherein the logical association is performed on the document capture memory. Burns teaches the machine readable data, OCR and MICR data of remittance document and check, is stored in memory 18, which is separate from image storage of memory 22.  Green teaches transmitting MICR data from host controller 18 to PC 26 to combine the MICR data with the image data.  Neither Burns nor Green teaches the above features recited in claim 31 because of structural and functional differences.

(Ex. 7 (Office Action dated 8/1/2007) at 13 (emphasis added).)  In other words, claim 31 issued as claim 1 because the examiner found that requiring one memory for the document images and a separate memory for check images provided a structural difference over the prior art, and the requirement to perform the retrieving step and the storing and associating steps on the document memory provided a functional difference.

In summary, the claim language, specification, and prosecution history of the '823 patent all lead to the same conclusion:  the document capture memory and the check capture memory are separate and distinct memory devices.

### 2.    ACS's Single Scanner Systems Do Not Separately Store the Check Images and Document Images

ACS's accused imaging systems use memory devices that store <u>both</u> the check and document images.[11]  Specifically, ACS's Single Scanner Systems store the images of checks and documents together—check images are not stored in a separate memory for "retrieval" and storage in a document memory storing document images.  (Ex. 2 (Kynch Declaration) at ¶ 5; Ex. 3 (Branstetter Declaration) at ¶ 7; Ex. 4 (Derasmo Declaration) at ¶ 8; Ex. 14 (Smith Declaration) at ¶ 7.)

"The court's construction of the claims often decides the question of infringement, whether literal or under the doctrine of equivalents."  *Netword*, 242 F.3d at 1350.  Under the proper claim construction, there should be no genuine issue that the ACS Single Scanner Systems do not practice claim 1 of the '823 patent.  Accordingly, there should be no dispute that if the Court construes claim 1 to require a separate document capture memory and check capture memory for separately storing document images and check images until the processor performs the retrieval-store-association steps, then ACS's Single Scanner Systems do not practice the limitations of claim 1 of the '823 patent either literally or under the doctrine of equivalents.

---

[11] As noted above, the NJ EZ-Pass system uses proprietary third-party software, so this statement does not apply to the NJ EZ-Pass system.  However, JPMorgan has failed to provide any evidence that the NJ EZ-Pass system stores document images in a "document capture memory" and check images in a "check capture memory."

**C.    ACS's Accused Systems Do Not Infringe the '823 Patent Because They Do Not Associate the Check Number with the Documents**

**1.    The '823 Patent Requires Associating the Check Number with the Documents**

During the prosecution of the parent application, applicants disclaimed coverage of systems that do not associate the check number with the other documents—systems such as that described in U.S. Patent No. 5,874,717 to Kern.  As such, "logically associating the check data record, the document data record, the check image and the document image" requires associating the check number with the documents.  (*See* Ex. 1 ('823 patent) at 8:17-19.)

In arguing for allowance of claim 1 (as filed in the parent application), applicants explained that "Kern does not teach nor even suggest <u>associating the check number with the other documents that accompanied the check</u>. . . . . Kern does not contain any teaching or suggestion that one should take the check number and associate that check number with the images of the documents that accompanied the check."  (Ex. 5 (Appeal Brief filed in parent application) at 8 (emphasis added).)  With respect to claim 13, applicants stated that

> independent claim 13, similar to claim 1, requires a processor that 'logically associating the check data record, the document data record, the check image and the document image.'  As described above with respect to independent claim 1, the system of Kern does not perform this association as expressly required in independent claim 13.  Further, it should be noted that the check data record includes the check number. This feature is not disclosed in Kern as discussed above.  <u>Therefore, Kern cannot associate anything with the check number because the check number is not included in Kern</u>.

(*Id.* at 9 (emphasis added).)

Claim 13 as filed in the parent application is exactly the same as claim 1 in the issued '823 patent except that claim 1 adds the retrieving, storing, and associating on the

document capture memory limitations.  As such, applicants' statements with respect to claim 13 in the parent application disclaiming systems that did not associate the documents with the check numbers apply to the same claim limitation in claim 1 of the '823 patent.  *See RFID Tracker, Ltd. v. Wal-Mart Stores, Inc.*, No. 2008-1412, 2009 WL 2502792, at *2 (Fed. Cir. Aug. 18, 2009) ("Prosecution disclaimer may [] arise from an applicant's statements in a parent patent application if the parent application relates to the same subject matter as the claim language at issue.") (citing *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007)).

### 2.  JPMorgan Offers No Evidence that ACS's Systems Associate the Check Number with the Documents

To establish that summary judgment is warranted, where the moving party does not bear the ultimate burden of persuasion at trial, it can either affirmatively negate the nonmovant's claim by providing affidavits, depositions or other evidence, or it can simply point out a lack of evidence for the other party on an essential element of that party's claim.  *Celotex*, 477 U.S. at 325.  JPMorgan offers no evidence that ACS's accused lockbox systems associate the documents with the check number.

### D.  ACS's Systems Do Not Infringe the '823 Patent Because They Do Not "Retrieve," "Store," and Associate on the Document Memory

### 1.  The '823 Patent Requires A Processor that "Retrieves," "Stores," and "Associates on the Document Capture Memory"

The claim language requires that the check images are <u>retrieved from</u> the check capture memory and <u>stored in</u> the document capture memory.  This process is necessary because the claimed system requires that:  1) the check images are retrieved from the check capture memory; 2) the check images are then joined in the same memory device as the document images in the document capture memory; and 3) the logical association

of the check images and document images is then performed on the document capture memory:

> [f]   wherein the processor further retrieves the check image and the check data record from the <u>check capture memory</u> and stores the check image and the check data record in the <u>document capture memory</u>, and

> [g]   wherein the logical association is performed on the <u>document capture memory</u>.

(Ex. 1 ('823 patent) at 8:20-25 (emphasis added).)

In other words, as required by claim 1, the processor must perform the steps of:

> 1)   <u>retrieving</u> the check image and the check data record from the check capture memory,

> 2)   <u>storing</u> the check image and the check data record in the document capture memory, and

> 3)   <u>performing</u> the logical association on the document capture memory.

(*See id.*)  Claim 1 issued because the examiner found that the requirement to perform the steps of retrieving, storing, and associating on the document memory provided a patentable difference over the art.  (Ex. 7 (Office Action dated 8/1/2007) at 13.)

### 2.   JPMorgan Offers No Evidence that ACS Systems "Retrieve," "Store" and "Associate on the Document Capture Memory

To establish that summary judgment is warranted, where the moving party does not bear the ultimate burden of persuasion at trial, it can either affirmatively negate the nonmovant's claim by providing affidavits, depositions or other evidence, or it can simply point out a lack of evidence for the other party on an essential element of that party's claim.  *Celotex*, 477 U.S. at 325.  JPMorgan offers no evidence that ACS's accused systems "retrieve from the check capture memory," "store in the document capture memory," and "associate on the document memory."   JPMorgan's sole

contention to date is that "one of skill in the art would expect" the ACS's systems to perform these steps. (Ex. 9 (JPMorgan's SDU infringement contentions) at 5.) However, JPMorgan admits that "the expectation of a person of ordinary skill in the art is an insufficient basis upon which to pursue an infringement claim" and that JPMorgan's infringement contentions use "unfortunate language." (Discovery Conference of 10/5/2009 at 10.) Given that JPMorgan offers no evidence that ACS's systems satisfy limitations [f] and [g] of claim 1, summary judgment is appropriate.

### E. Prosecution History Estoppel Forecloses Infringement Under the Doctrine of Equivalents

Prosecution history estoppel applies in this case to preclude JPMorgan from asserting infringement of the '823 patent under the doctrine of equivalents. Following the examiner's rejection, the applicants amended claim 1 to include the following limitations:

> [f]     wherein the processor further retrieves the check image and the check data record from the <u>check capture memory</u> and stores the check image and the check data record in the <u>document capture memory</u>, and
>
> [g]     wherein the logical association is performed on the <u>document capture memory</u>.

(Ex. 1 ('823 patent) at 8:20-25 (emphasis added).)

These limitations require separate document and check memory, and expressly distinguish between the two. ACS's systems, utilizing a single memory device, cannot satisfy these limitations. Because the applicants amended the asserted claim for purposes of patentability, prosecution history estoppel applies and the doctrine of equivalents is not available. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1377 (Fed. Cir. 2007) (finding that if the patentee fails to "establish that the reason for the

amendment was unrelated to patentability," "prosecution history estoppel would bar the application of the doctrine of equivalents as to that element").

## VI.    IN THE ALTERNATIVE, THE '823 PATENT IS INVALID

In the unlikely event that JPMorgan convinces the Court that the claims cover single scanner/single memory implementations, then claims 1-4 of the '823 patent are invalid as anticipated under § 102(e). The '823 patent's specification acknowledges that prior art systems existed that imaged documents and checks. (Ex. 1 ('823 patent) at 1:60-2:2.) One such system is that disclosed in U.S. Patent No. 5,874,717 to Kern et al. ("the Kern patent"). The Kern patent, titled Image-Based Document Processing System, discloses an invention that

> relates generally to improved means and methods for processing documents using electronic imaging, and more particularly, to the use of electronic imaging for processing financial documents, such as checks and related documents in a banking environment. Today's financial services industry is facing the immense challenge of processing huge amounts of documents efficiently. Predictions that document payment methods would decline have not been realized. In fact, document payment methods have grown worldwide and are expected to continue increasing. There is thus a vital need to devise improved means and methods for processing such documents.
>
> The use of imaging technology as an aid to document processing has been recognized as one way of significantly improving document processing, as disclosed, for example, in U.S. Pat. Nos. 4,205,780, 4,264,808, and 4,672,186. Generally, imaging involves optically scanning documents to produce electronic images that are processed electronically and stored on high capacity storage media (such as magnetic disc drives and/or optical memory) for later retrieval and display. It is apparent that document imaging provides the opportunity to reduce document handling and movement, since these electronic images can be used in place of the actual documents.

(Ex. 12 (Kern patent) at 1:32-55.)

In support of its misdirected infringement theories, JPMorgan's claim construction proposals seek to disregard the claims, specification, and prosecution history

that describe the invention as having separate document and check scanners, along with separate document and check memory.   But if JPMorgan's infringement and claim construction arguments have merit, then the Kern reference—which discloses a single scanner for imaging documents and checks—anticipates claims 1-4 of the '823 patent.

### A.   Kern Discloses a Document Processor for Imaging Documents and Checks

Under JPMorgan's claim construction proposals, the following two limitations of claim 1 are anticipated by a system with a single scanner for imaging documents and checks that is programmed to produce a document and check data record:

> [a]   <u>a document capture component</u>, the document capture component scanning the at least one document thereby generating a document image, the document capture component further generating a document data record that identifies the at least one document; . . .

> [c]   <u>a check capture component</u>, the check capture component scanning the check thereby generating a check image, the check capture component further generating a check data record that identifies the check;

(Ex. 1 ('823 patent) at 8:1-5, 9-12 (emphasis added).)  Kern discloses just such a device.

The Kern patent discloses "a high speed document processor 32 which includes imaging capability[.]"   (Ex. 12 (Kern patent) at 5:24-26, FIG. 1.)   The high speed document processor processes "transactions."  A transaction includes "[t]he deposit ticket 15 along with its associated checks 10, and any cash paid in or paid out slip[.]"  (*Id.* at 4:18-21.)   A transaction may also include "[o]ther documents, such as mortgage and credit card payments[.]"[12]  (*Id.*)   Kern further discloses that the high speed document processor creates a data record for the documents and checks.  Specifically, the high

---

[12]  The parties agreed that a "lockbox remittance" is simply "payment information provided to a lockbox processing system in the form of at least a check and a document associated with a check that form a group."

speed document processor has "a capability for automatically reading the dollar amounts of the transaction documents" and "reads the MICR code line on each document as the document flows through the unit[.]"   (*Id.* at 5:27-28, 31-32.)   The "corresponding document data, such as MICR, sequence number, dollar amount (if read) and pocket location will have been sent to the host computer 34 for storage in its document data base."  (*Id.* at 6:10-13.)

    **B.**    **Kern Discloses a Storage and Retrieval Unit for Storing Images of Documents and Checks**

Under JPMorgan's claim construction proposals, the following two limitations of claim 1 are anticipated by a system with a single memory for storing images and data of documents and checks:

> [b]    <u>a document capture memory</u> coupled to the document capture component and storing the document image and the document data record; . . .

> [d]    <u>a check capture memory</u> coupled to the check capture component and storing the check image and the check data record; and

(Ex. 1 ('823 patent) at 8:6-8, 13-15 (emphasis added).)

The Kern patent discloses a host computer for processing the document and check images, as well as storing the data read from the documents:

> The data read from the transaction documents by the document processor 32 are fed to the computer 34 via communication link 36, and typically includes each document's MICR data, amount data (if read), assigned sequence number and -pocket location. The host computer 34 maintains a data base which stores the pertinent data corresponding to each transaction document being processed.

(Ex. 12 (Kern patent) at 5:57-63, FIG. 1.)   The images of the documents and checks, along with the corresponding data, are then sent to storage and retrieval unit 40:

> Images captured by the document processor 32 are processed, compressed, and formed into image packets. Each packet comprises one or more

compressed images of a document along with an identifying header containing document identifying data (such as MICR data and sequence number). These image packets are then sent, via a high speed, point-to-point optical network 41 for storage on a high capacity disk-based magnetic storage and retrieval unit 40. The storage and retrieval unit 40 communicates with the computer 34 via communication link 42 and communication processor 34a.

(*Id.* at 5:64-6:7, FIGS. 1, 2.)

### C.   Kern Discloses a Processor for Retrieving Images and Performing the Logical Association

Under JPMorgan's claim construction proposals (and application of the claims to ACS's systems), the following three limitations of claim 1 are anticipated by a system with a single memory for storing images and data of documents and checks that includes a processor for retrieving images and performing the logical association:

> [e]   a processor coupled to the <u>check capture memory</u> and the <u>document capture memory</u>, the processor logically associating the check data record, the document data record, the check image and the document image;

> [f]   wherein the processor further retrieves the check image and the check data record from the <u>check capture memory</u> and stores the check image and the check data record in the <u>document capture memory</u>, and

> [g]   wherein the logical association is performed on the <u>document capture memory</u>.

(Ex. 1 ('823 patent) at 8:16-25 (emphasis added).)

The Kern patent discloses a host computer (a processor) for retrieving images and data, as well as performing the logical association:

> The data read from the transaction documents by the document processor 32 are fed to the computer 34 via communication link 36, and typically includes each document's MICR data, amount data (if read), assigned sequence number and -pocket location. The host computer 34 maintains a data base which stores the pertinent data corresponding to each transaction document being processed.

(Ex. 12 (Kern patent) at 5:57-63, FIG. 1.)

The Kern patent also discloses logically associating—at least under JPMorgan's proposed construction and application of the claims to ACS's systems—the document image, check image, document data record and check data record.  Figure 20 provides a workstation with the document image, check image, document data record and check data record from a transaction (color and labels added):



Kern explains that "Workstation 50c is advantageously provided with a multi-window display (FIG. 20) corresponding to a single transaction."  (*Id.* at 15:36-38.)  The transaction is displayed on the screen, thus demonstrating that the document image, check image, document data record and check data record are logically associated under JPMorgan's proposed construction: "creating a logical, rather than physical relation

between . . . ." Kern describes the document image, check image, document data record,

and check data record associated and displayed as follows:

> Document Image: "A first window W1 in FIG. 20 displays an image of a deposit ticket 15 indicating a total of $686.30."

(*Id.* at 15:44-45.)

> Document Data Record: "A second window W2 in FIG. 20 provides a summary of the transaction derived from the database in computer 34. The 'CR' amount (686.30) in window W2 is the deposit ticket total, the 'DB' amount (676.30) is the sum of the checks being deposited, the 'DIF' amount (10.00) is the difference between the 'CR' and 'DB' amounts, that is, the amount by which the transaction is out of balance." *Id.* at 15:48-54. "A third window W3 in FIG. 20 labeled 'CREDITS' lists each of the "CR" (deposit ticket) amounts."

(*Id.* at 15:60-61.)

> Check Image: "A fifth window W5 in FIG. 20 shows a partial image of the particular debit (check) Whose amount is highlighted in window W4, which is the check for 235.00. The particular check which is highlighted can be changed by using the up-or-down keys in FIG. 23. Manipulation of the check shown in window W5, such as scrolling (to see other parts of the check), flipping, etc., is accomplished by appropriate use of particular keyboard keys (FIGS. 22 and 23)."

(*Id.* at 16:1-8.)

> Check Data Record: "A fourth window W4 in FIG. 20 labeled 'DEBITS' lists each of the 'DB' (check) amounts. Accordingly window W3 lists the amount of each of the six debits (checks) whose sum is equal to the total debit "DB" amount in window W2." *Id.* at 15:63-67. "A seventh window W7 in FIG. 20 at the bottom of the screen shows MICR code line data for a highlighted item in window W3 or W4, dependent upon which immediately preceding window was active."

(*Id.* at 16:20-24.)

## D.      Dependent Claims 2-4 Are Also Invalidated By Kern

Dependent claim 2 of the '823 patent requires "a Compact Disk Read Only

Memory (CD-ROM) drive coupled to the document capture memory, wherein ROM

drive is used to generate a CD-ROM containing the check data records, the document

data records, the check images and the document images associated with the customer."
(Ex. 1 ('823 patent) at 8:27-32.)    Kern anticipates this limitation when it discloses
"produc[ing] electronic images that are processed electronically and stored on high
capacity storage media (such as magnetic disc drives and/or optical memory) for later
retrieval and display." (Ex. 12 (Kern patent) at 1:50-54.)

Dependent claim 3 of the '823 patent requires "an Internet interface coupled to
the document capture memory, wherein Internet interface is capable of allowing a
customer with access to the check data records, the document data records, the check
images and the document images associated with the customer." (Ex. 1 ('823 patent) at
8:33-38.)    As the applicants explained in the file history of the parent patent, "these
interfaces are well-known to those skilled in the art." (Ex. 13 (Response to Office
Action) at 8.)    Therefore, whether or not the addition of an Internet interface was
explicitly disclosed in Kern, it was rendered obvious by the disclosure in the Kern patent.
*See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) ("If a person of ordinary skill
can implement a predictable variation, § 103 likely bars its patentability.").

Similarly, dependent claim 4 of the '823 patent requires "an bulk file interface
coupled to the document capture memory, wherein bulk file interface is capable of
transmitting to a customer the document data records, the check images and the document
images associated with the customer." (Ex. 1 ('823 patent) at 8:39-43.)    As the applicants
explained in the file history of the parent patent, "[t]his type of interface for transmitting
bulk electronic files is well-known to those of skill in the art."    Ex. 13 (Response to
Office Action) at 8.    Again, therefore, whether or not the addition of a bulk file interface

was explicitly disclosed in Kern, it was rendered obvious by the disclosure in the Kern patent. *See KSR Int'l*, 550 U.S. at 417.

In summary, under JPMorgan's proposed claim construction and application of the claims to ACS's accused systems, claims 1-4 of the '823 patent are invalid. JPMorgan will be unable to demonstrate any difference, with respect to the limitations of the asserted claims, between ACS's allegedly infringing systems and the system disclosed in Kern.  Accordingly, should the Court adopt JPMorgan's claim construction proposals, judgment as a matter of law that claims 1-4 of the '823 patent are invalid would be appropriate.

## VII.   CONCLUSION

For the foregoing reasons, ACS respectfully requests that summary judgment of noninfringement be granted.  First, summary judgment of non-infringement of claims 1-4 of the '823 patent is proper because there is no genuine question of material fact that ACS's systems use only a single scanner to image documents and checks.  Second, summary judgment of non-infringement of claims 1-4 of the '823 patent is proper because there is no genuine question of material fact that ACS's systems store images of documents and checks together, not separately.  Finally, summary judgment of non-infringement of claims 1-4 of the '823 patent is proper because JPMorgan has failed to prove that ACS associates the documents with the check number and that the ACS systems "retrieve from the check capture memory," "store in the document capture memory," and "associate on the document memory."

Should JPMorgan manage to convince the Court that the claims cover single scanner and single memory implementations, then claims 1-4 of the '823 patent are invalid as anticipated by the Kern patent.

Dated:  December 1, 2009

**CONNOLLY BOVE LODGE & HUTZ LLP**

_____/s/ Kevin F. Brady_____
Collins J. Seitz, Jr.  (Bar. No. 2237)
Kevin F. Brady (Bar No. 2248)
1007 North Orange Street, P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 656-0116
cseitz@cblh.com
kbrady@cblh.com

*Attorneys for Defendants Affiliated Computer Services, Inc., and ACS State & Local Solutions, Inc.*

**OF COUNSEL:**

Mike McKool
Lewis T. LeClair
Theodore Stevenson, III
David Sochia
Bradley Caldwell
Phillip Aurentz
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

John Campbell
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Brett E. Cooper
McKool Smith, P.C.
One Bryant Park
47th Floor
New York, NY 10036
Telephone:  (212) 402-9400
Facsimile:  (212) 402-9444

## CERTIFICATE OF SERVICE

I, Kevin F. Brady, hereby certify that on December 1, 2009, I caused to be electronically filed a true and correct copy of ACS's OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,317,823 with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to registered counsel of record via e-mail.

I hereby further certify that on December 1, 2009, I caused a copy of ACS's OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,317,823 to be served on the following counsel of record by the manner so indicated:

*E-mail*
Ronald J. Schutz
Becky R. Thorson
Robins Kaplan Miller & Ciresi LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402

*/s/ Kevin F. Brady*
Kevin F. Brady (#2248)