## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JPMORGAN CHASE & CO., | ) | |
| JPMORGAN CHASE BANK, N.A., and | ) | |
| JPMORGAN CHASE ELECTRONIC | ) | |
| FINANCIAL SERVICES, INC., | ) | |
| | ) | C.A. No. 08-189-SLR |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AFFILIATED COMPUTER SERVICES, INC. and | ) | JURY TRIAL DEMANDED |
| ACS STATE & LOCAL SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ACS'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 5,917,965

Collins J. Seitz, Jr. (Bar No. 2237)
Kevin F. Brady (Bar No. 2248)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street, P.O. Box 2207
Wilmington, DE 19899
Telephone:  (302) 658-9141
cseitz@cblh.com
kbrady@cblh.com

December 1, 2009

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   ISSUES PRESENTED ................................................................................................. 3

    A.   ACS's Systems Without a MICR Reader Are Noninfringing .......................................................................................... 3

    B.   ACS's SDU Systems Are Noninfringing ................................................ 4

    C.   ACS's Aetna (AIM) System Is Noninfringing ...................................... 4

    D.   All ACS Systems Are Noninfringing ..................................................... 5

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................ 5

    A.   ACS's Systems Without a MICR Reader ............................................... 5

    B.   ACS's SDU Systems .............................................................................. 6

    C.   ACS's Aetna (AIM) System .................................................................. 7

IV.   THE '965 PATENT TEACHES STORING MAGNETICALLY DECODED MICR DATA IN A TAG FIELD OF A TIFF FILE ....................... 7

V.    SUMMARY JUDGMENT OF NONINFRINGEMENT SHOULD BE GRANTED ......................................................................................................... 10

    A.   The ACS Systems Without a MICR Reader Do Not Infringe the '965 Patent........................................................................ 12

        1.   The Systems Without a MICR Reader Do Not Have a Magnetic Ink Reader .......................................................... 12

        2.   The Systems Without a MICR Reader Do Not Store MICR Data in a Tag Field of a TIFF File ................................. 12

    B.   ACS's SDU Systems Do Not Infringe the '965 Patent ....................... 14

        1.   The SDU Systems Do Not Store MICR Data in a Tag Field of a TIFF File ...................................................... 14

    C.   ACS's Aetna System Does Not Infringe the '965 Patent .................... 15

        1.   The Aetna System Does Not Store MICR Data in a Tag Field of a TIFF File ...................................................... 15

    D.   JPMorgan Offers No Evidence that the ACS Systems Satisfy Numerous Limitations of the Asserted Claims of the '965 Patent........................................................................................... 17

E.     Prosecution History Estoppel Forecloses Infringement
       Under the Doctrine of Equivalents ................................................................... 18

VI.    CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
299 F.3d 1336 (Fed. Cir. 2002) ................................................................. 18, 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................... 10

*Barmag v. Murata Mach., Ltd.*,
731 F.2d 831 (Fed. Cir. 1984) ....................................................................... 10

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990) ....................................................................... 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................. 10, 17

*DeMarini Sports, Inc. v. Worth, Inc.*,
239 F.3d 1314 (Fed. Cir. 2001) ..................................................................... 10

*Fantasy Sports Props. v. Sportsline.com, Inc.*,
287 F.3d 1108 (Fed. Cir. 2002) ..................................................................... 16

*Netword, LLC v. Centraal Corp.*,
242 F.3d 1347 (Fed. Cir. 2001) ..................................................................... 10

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006) ................................................................. 11, 15

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(a) ........................................................................................ 10

*JPEG Homepage*,
http://www.jpeg.org/jpeg/index.html. ............................................................ 14

## TABLE OF EXHIBITS

Ex. 1          U.S. Patent No. 5,917,965 (JPMC-ACS-00203273-343; JA00001-071)

Ex. 2          Response to Office Action filed in File History of '965 Patent dated 6/22/1998
               (JPMC-ACS-02053550-556; JA00590-596)

Ex. 3          Exhibit AA to JPMorgan's Disclosure of Asserted Claims and Infringement
               Contentions in Response to ACS's Interrogatory Nos. 7-8

Ex. 4          Exhibit B to JPMorgan's Disclosure of Asserted Claims and Infringement
               Contentions in Response to ACS's Interrogatory Nos. 7-8

Ex. 5          Declaration of Wes Branstetter

Ex. 6          Declaration of John Kynch

Pursuant to the Court's Scheduling Order, Defendants Affiliated Computer Services, Inc. and ACS State & Local Solutions, Inc., (collectively, "ACS") respectfully submit this Motion and Brief for Summary Judgment of Non-infringement of United States Patent No. 5,917,965 ("the '965 patent").

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The '965 patent relates to check imaging.  The patent claims to solve the problem of combining a check's image with its data in one computer file.  When a check is imaged, it is merely a picture of a check.  Although the image contains a picture of the account number, bank routing number, and check number in special magnetic ink (called MICR data) at the bottom of the check, that data is just in picture form, and not in a form that a computer can easily process or manipulate.  As a result, before the JPMorgan patent, if the architect of a check imaging system wanted the data that appears on the check image, she/he would have to decode the MICR data from the check using a MICR reader, save it in a separate data file, and then associate the image file with the data file.

To solve this problem, JPMorgan's '965 patent claims a solution in which the data is not contained in a separate file.  Rather, after the MICR data is decoded from a check, the JPMorgan patent provides that it will be saved in one of the metadata fields of the image file.  Metadata fields are portions of a computer file that contain information about that file, such as the author, date created, date last edited, and other things.  The claims in the '965 patent are directed to a specific type of images—TIFF images.  TIFF images are not specific to check imaging; they are used for many kinds of images.  TIFF files thus do not have a dedicated field for check MICR data.  So using the JPMorgan patent, one would utilize an available metadata field (called a tag field with TIFF images) and insert the MICR data into that field.

As shown below, ACS's accused check imaging systems do not infringe for several reasons:

1.      Many of ACS's accused systems use a scanner that does not have a MICR reader, so they do not (and cannot) satisfy the requirement that the systems have a magnetic ink character reader.

2.      In addition, none of the accused systems store MICR data in a tag field of a TIFF file, which is required by all the claims.

3.      JPMorgan's only response to these undisputed facts is to advance a legally flawed "capable of infringing" argument for certain of the accused systems.  JPMorgan argues that ACS could revise the source code of its systems to make them use other available (but unused) portions of the code to store MICR data in a tag field in a TIFF file.  Setting aside the legal errors in JPMorgan's theory, the "capable of infringing" argument fails because all but one of the systems do not even have a MICR reader—so they are not even physically capable of infringing.

4.      As to the one system with a MICR reader, which is currently used by Aetna, it is not capable of infringing without revisions to the program source code.

5.      JPMorgan also offers no evidence that ACS's accused systems satisfy numerous additional limitations of claims 1, 3, 4, 5, 6, 7, 10, 11, 20, 22, 23, 24, 25, 26 and 30 of the '965 patent.  JPMorgan's sole contention to date is that "one of skill in the art would expect" the ACS systems to satisfy the limitations of these claims.  (Ex. 4 (JPMorgan's infringement contentions) at 5.)  However, JPMorgan admits that "the expectation of a person of ordinary skill in the art is an insufficient basis upon which to pursue an infringement claim" and that JPMorgan's infringement contentions use

"unfortunate language." (Discovery Conference of 10/5/2009 at 10.) Given the fact that JPMorgan offers no evidence that ACS's systems satisfy the limitations of these claims, summary judgment is appropriate.

6.     This motion does not turn on claim construction; rather, summary judgment of noninfringement is compelled based on the express language of the claims. Because, as explained below, these differences between the accused systems and the '965 patent claims are both undisputed and substantial, summary judgment of noninfringement should be granted.

## II.     ISSUES PRESENTED

'965 Claims:   The '965 patent provides two sets of claims—a set of method claims and a set of apparatus claims. Claim 1 is the sole independent method claim. Claims 2-19 and claims 39-40, directly or indirectly, depend from claim 1. Claim 20 is the sole independent apparatus claim. Claims 21-38 and 41-42, directly or indirectly, depend from claim 20.

ACS Accused Systems:   ACS's accused check imaging systems may be logically divided into three groups: (i) systems that use a scanner without a magnetic ink character recognition ("MICR") reader; (ii) state disbursement unit systems ("SDU systems"); and (iii) the Aetna system.

The '965 claims and the ACS accused systems present the following issues for resolution by the Court:

### A.     ACS's Systems Without a MICR Reader Are Noninfringing

1.     Whether summary judgment of noninfringement of claims 20-38 and 41-42 of the '965 patent should be granted on the systems without a MICR reader when, based on undisputed evidence, there is no genuine issue that these systems do not

practice, either literally or under the doctrine of equivalents, the following limitation of

claim 20:

- a magnetic ink reader for decoding said magnetic ink code line to form decoded magnetic ink coded data.

2.      Whether summary judgment of noninfringement of claims 1-42 of the

'965 patent should be granted on the systems without a MICR reader when, based on

undisputed evidence, there is no genuine issue that these systems do not practice, either

literally or under the doctrine of equivalents, the following limitation of claim 1 and 20:

- the decoded magnetic ink coded data stored in a tag field in the TIFF file.

**B.      ACS's SDU Systems Are Noninfringing**

3.      Whether summary judgment of noninfringement of claims 1-42 of the

'965 patent should be granted on the SDU systems when, based on undisputed evidence,

there is no genuine issue that these systems do not practice, either literally or under the

doctrine of equivalents, the following limitation of claims 1 and 20:

- the decoded magnetic ink coded data stored in a tag field in the TIFF file.

**C.      ACS's Aetna (AIM) System Is Noninfringing**

4.      Whether summary judgment of noninfringement of claims 1-42 of the

'965 patent should be granted on the Aetna (AIM) system when, based on undisputed

evidence, there is no genuine issue that this system does not practice, either literally or

under the doctrine of equivalents, the following limitation of claims 1 and 20:

- the decoded magnetic ink coded data stored in a tag field in the TIFF file.

### D.     All ACS Systems Are Noninfringing

5.     Whether summary judgment of noninfringement of claims 1, 3, 4, 5, 6, 7, 10, 11, 20, 22, 23, 24, 25, 26 and 30 of the '965 patent should be granted on ACS's accused systems when JPMorgan has failed to identify any evidence that the accused systems satisfy the limitations of these claims, either literally or under the doctrine of equivalents.

## III.     STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     The second limitation of claim 20 of the '965 patent requires "a magnetic ink reader for decoding said magnetic ink code line to form decoded magnetic ink coded data." (Ex. 1 ('965 patent) at 56:12-13.)

2.     The third limitation of claim 1 and third limitation of claim 20 of the '965 patent require "a tagged image file format (TIFF) file." (Ex. 1 ('965 patent) at 54:38-39, 56:14-15.)

3.     The third limitation of claim 1 and third limitation of claim 20 of the '965 patent require "the decoded magnetic ink coded data stored in a tag field in the TIFF file." (Ex. 1 ('965 patent) at 54:39-40, 56:16-18.)

### A.     ACS's Systems Without a MICR Reader

4.     JPMorgan has accused, among others, the following ACS systems of infringing claims 1-42 of the '965 patent:   AXA, Celtic (Premiums), Celtic (Applications), Excellus, Marsh, Sedwick CMS and Wellpoint/Empire (collectively, "the systems without a MICR reader"). (Ex. 3 (Exhibit AA to JPMorgan's Disclosure of Asserted Claims and Infringement Contentions in Response to ACS's Interrogatory Nos. 7-8) at 1, 4.)

5.      The Celtic (Premiums), Celtic (Applications), Excellus and Sedwick CMS systems use a Kodak i840 scanner for imaging checks.  (Ex. 5 (Branstetter Declaration) at ¶ 7.)

6.      The Wellpoint/Empire system does not image checks.  (Ex. 5 (Branstetter Declaration) at ¶ 13.)

7.      The AXA system uses a Kodak 3500 or i260 scanner for imaging checks. (Ex. 5 (Branstetter Declaration) at ¶ 5.)

8.      The Marsh system uses a Kodak 9520 scanner for imaging checks.  (Ex. 5 (Branstetter Declaration) at ¶ 6.)

9.      The Kodak i840 scanner, the Kodak 3500 scanner, the Kodak i260 scanner, and the Kodak 9520 scanner do not have a MICR reader.  (Ex. 5 (Branstetter Declaration) at ¶ 8.)

10.      The AXA, Marsh, Celtic (Premiums), Celtic (Applications), Excellus, and Sedwick CMS systems do not use optical character recognition (OCR) for checks.  (Ex. 5 (Branstetter Declaration) at ¶ 9.)

11.      The Aetna (AIM), Aetna (claims), AXA, Marsh, Celtic (Premiums), Celtic (Applications), Excellus, Sedwick CMS and Wellpoint/Empire Systems do not store MICR data in a tag field in a TIFF file.  (Ex. 5 (Branstetter Declaration) at ¶ 10, 12.)

**B.      ACS's SDU Systems**

12.      JPMorgan has accused, among others, the ACS SDU systems of infringing claims 1-42 of the '965 patent.  (*See* Ex. 4 (Exhibit B to JPMorgan's Disclosure of Asserted Claims and Infringement Contentions in Response to ACS's Interrogatory Nos. 7-8) at 1, 17.)

13.     The SDU systems currently use an OPEX 3600 series scanner for imaging checks.  (Ex. 6 (Kynch Declaration) at ¶ 4.)

14.     The SDU systems do not store MICR data in a tag field in a TIFF file. (Ex. 6 (Kynch Declaration) at ¶ 6.)

### C.     ACS's Aetna (AIM) System

15.     JPMorgan has accused, among others, the ACS Aetna system of infringing claims 1-42 of the '965 patent.  (Ex. 3 (Exhibit AA to JPMorgan's Disclosure of Asserted Claims and Infringement Contentions in Response to ACS's Interrogatory Nos. 7-8) at 1, 4.)

16.     The Aetna (AIM) system uses a Kodak i6090 scanner for imaging checks. (Ex. 5 (Branstetter Declaration) at ¶ 11.)

17.     The Aetna (AIM) system does not store MICR data in a tag field in a TIFF file.  (Ex. 5 (Branstetter Declaration) at ¶ 12.)

## IV.     THE '965 PATENT TEACHES STORING MAGNETICALLY DECODED MICR DATA IN A TAG FIELD OF A TIFF FILE

Payor banks maintain millions upon millions of copies of checks in their files.  At some future date, the payor may be required to produce a copy of a check as proof of payment.  This often requires that the payor retrieve the bank copy of the instrument from the payor bank's archive.  To fulfill its customers' requests or comply with subpoenas, countless man-hours of searching are required to locate copies of the requested instruments.  To facilitate processing of checks, the banking industry has, for many years, used a MICR line on each check.

The MICR line of a check is a series of alpha-numeric digits magnetically encoded on a check using magnetic ink.  A MICR line is found along the bottom of most checks.  An exemplary check with a MICR line is shown below.



The encoded information in the MICR line usually includes the check number, bank routing number and account number.  Where the check writer (or some intermediate in the check handling process) chooses, the encoded information in the MICR line also includes the amount of the check.  Normally, when a check is processed, the information contained in the MICR line is magnetically decoded and becomes part of the bank's electronic record of the check.

The '965 patent is directed to a system that allows a user to request, retrieve, and display check copies with turnaround time much faster than in the prior art by storing the magnetically decoded MICR line in a tag field in a tagged image file format (TIFF) file. (Ex. 1 ('965 patent) at 17:63-67, 18:40-64.)  In other words, the '965 patent teaches storing the check image in the TIFF format and embedding within the TIFF file a tag field that stores the magnetically decoded MICR data.  The TIFF file format includes a number of tag fields that may be used to store information.  Using the magnetically decoded MICR data and knowing where it is stored within the TIFF file allows a user to quickly request, retrieve, and display check copies.

The application for the '965 patent included 229 claims as originally filed.  The examiner rejected the claims at issue as obvious.  In response, the applicants argued that the claims "are essentially directed to (for example) a method in which . . . the electronic image and the decoded magnetic ink coded data are merged <u>into a Tagged Image File Format (TIFF)</u> file[.]"  (Ex. 2 (Response to Office Action) at JA00591 (emphasis in original).)  Furthermore, the applicants explained that the claims "require that the decoded magnetic ink coded data be stored as 'a tag field' in the TIFF file."  *Id.*

The applicants further argued that:

> The Examiner may not be aware that the assignee of the present invention registered the new fields that were created specifically for the purposes of this invention with the Aldus Corporation which developed the TIFF standard.  See the disclosure at page 20, line 17 (as amended) for the reference to Aldus.  These fields were not available in the standard file formats, contrary to the assertion in the Office Action.

> Indeed, Behera does not mention adding the MICR data to the TIFF file because Behera apparently <u>just added optical storage of image data</u> to an existing check processing system that already was storing the MICR data magnetically. . . .

> For example, there is no merging of data such as image data with decoded magnetic ink coded data (MICR data) as in the present invention.  Further, this reference does not suggest the manner in which the MICR data is to be stored in a TIFF file, since this reference does not even suggest use of such files. . . .

> The instant inventors were designing a new system from the ground up, and so developed a more integrated approach by <u>placing the MICR data in the TIFF file along with the image data in the specific form indicated in the claims herein</u>.  Thereby, when the data is retrieved by a request from a customer, the customer gets all of the data needed without coordinating the retrieval with an additional, different storage medium.  This avoids complexity.  <u>At the time of the development of the instant inventions, TIFF was an emerging standard and it was not at all obvious that these fields should be added in the manner in which the inventors herein have done</u>.  The absence of any reference to TIFF by Behera is testimony to this fact.

(*Id.* at JA00591-593 (emphasis added).)   Accepting the applicants' representation, the examiner allowed certain claims, which issued as claims 1-42.

## V.   SUMMARY JUDGMENT OF NONINFRINGEMENT SHOULD BE GRANTED

The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   "Summary judgment is as appropriate in a patent case as in any other." *Barmag v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).   To establish that summary judgment is warranted, where the moving party does not bear the ultimate burden of persuasion at trial, it can either affirmatively negate the nonmovant's claim by providing affidavits, depositions or other evidence, or it can simply point out a lack of evidence for the other party on an essential element of that party's claim.  *Celotex*, 477 U.S. at 325.

Summary judgment should be granted when there is no genuine issue of material fact and judgment as a matter of law is appropriate.  FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).   "The court's construction of the claims often decides the question of infringement, whether literal or under the doctrine of equivalents." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1350 (Fed. Cir. 2001). Literal infringement of a claim occurs only "when every limitation recited in the claim appears in the accused device, *i.e.*, when 'the properly construed claim reads on the accused device exactly.'" *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001) (quoting *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)); *see also Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed.

Cir. 1990) ("To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent.").

Again, judgment of noninfringement on the '965 patent is necessitated based on the words of the claims, not either party's proposed claim construction. With respect to apparatus claim 20, the claim requires "a magnetic ink reader for decoding said magnetic ink code line to form decoded magnetic ink coded data." (Ex. 1 ('965 patent) at 56:12-13.) ACS's systems without a MICR reader employ Kodak scanners that do not include a MICR reader and, therefore, do not satisfy this limitation of apparatus claim 20 or its dependents. In addition, none of the accused systems (including the systems without a MICR reader, the SDU systems, and the Aetna system) store MICR data in a tag field in a tagged image file format ("TIFF") file. The third limitation of claim 1 and third limitation of claim 20 of the '965 patent require "the decoded magnetic ink coded data stored in a tag field in the TIFF file." (Ex. 1 ('965 patent) at 54:39-40, 56:16-18.) Simply put, none of the ACS check imaging systems store decoded MICR data in a tag field of a TIFF file.

JPMorgan's only response to these undisputed facts is to advance a legally flawed "capable of infringing" argument for the non-SDU systems. JPMorgan argues that ACS could write code that would use other available (but unused) code to store MICR data in a tag field in a TIFF file. Setting aside the legal errors in JPMorgan's theory, the "capable of infringing" argument applies only to the Aetna system. In addition, as explained below, "capability" is irrelevant to method claims, as all steps of a claimed method must actually be performed for infringement. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). Furthermore, with the exception of the Aetna system, none

of the non-SDU systems have "a magnetic ink reader" as required by the apparatus claims.   Accordingly, even if the Court should find a factual issue in JPMorgan's "capable of infringing" argument, the issue would only apply to the Aetna system.

**A.      The ACS Systems Without a MICR Reader Do Not Infringe the '965 Patent**

**1.      The Systems Without a MICR Reader Do Not Have a Magnetic Ink Reader**

ACS's systems without a MICR reader do not practice apparatus claim 20. Apparatus claim 20 requires "a magnetic ink reader for decoding said magnetic ink code line to form decoded magnetic ink coded data."  (Ex. 1 ('965 patent) at 56:12-13.)  The accused systems without MICR readers employ Kodak scanners that do not include a MICR reader and, therefore, do not satisfy this limitation of apparatus claim 20 and its dependents.  (Ex. 5 (Branstetter Declaration) at ¶ 4-8.)  As such, summary judgment of noninfringement of claims 20-38 and 41-42, both literally and under the doctrine of equivalents, is appropriate.

**2.      The Systems Without a MICR Reader Do Not Store MICR Data in a Tag Field of a TIFF File**

The third limitation of claim 1 and third limitation of claim 20 of the '965 patent require "the decoded magnetic ink coded data stored in a tag field in the TIFF file."  (Ex. 1 ('965 patent) at 54:39-40, 56:16-18.)  The parties dispute whether the "tag field in the TIFF file" must be defined by the TIFF standard and whether the "tag field in the TIFF file" must be merged into the same TIFF file and stored in the same physical electronic

storage device as the image data.[1]  But regardless of the construction ultimately adopted

by the Court, both the independent apparatus claim and the independent method claim

expressly require storing the MICR data in a tag field in the TIFF file.  (Ex. 1 ('965

patent) at 54:39-40, 56:16-18.)

The '965 specification explains that the TIFF tags are stored within the industry

standard TIFF format file:  "The TIFF file 22 is in industry standard TIFF format. The

non-image data is given TIFF tags and stored within the file as financial information."

(Ex. 1 ('965 patent) at 18:40-49.)   Moreover, the applicants for the '965 patent

distinguished the Behera prior art reference on the grounds that the Behera prior art did

not merge MICR data with image data in a TIFF file:

> [T]here is no merging of data such as image data with decoded magnetic
> ink coded data (MICR data) as in the present invention.  Further, this
> reference does not suggest the manner in which the MICR data is to be
> stored in a TIFF file, since this reference does not even suggest use of
> such files.  Still further, as noted previously, the implication of the claims
> herein is that the merged MICR data and the image data necessarily are
> stored together with one another in the same physical memory.  That is not
> true of the cited reference.

(Ex. 2 (Response to Office Action) at JA00592 (emphasis added).)

Similar to the Behera reference, the ACS systems without a MICR reader do not

store MICR data in a TIFF file.  As such, these systems do not satisfy the claim limitation

"the decoded magnetic ink coded data stored in a tag field in the TIFF file."  (Ex. 1 ('965

---

[1] The parties dispute whether the "tagged image file format (TIFF) file" is "a standard file
format for storing images and data in tag fields currently under the control of Adobe
Systems" (as ACS proposes), or whether it can be any general "file format for storing
images and data in tag fields" (as JPMorgan proposes).  As ACS demonstrated in its
Opening Claim Construction Brief, the specification and the prosecution history explain
that the TIFF file claimed by the '965 patent is the standardized format currently under
the control of Adobe Systems.  (D.I. 403 at 30-33.)   But regardless of the claim
construction ultimately adopted by the Court, the claim expressly requires using "a
tagged image file format."

patent) at 54:39-40, 56:16-18.)  Moreover, ACS's systems without a MICR reader do not

(and cannot) decode the MICR data and further do not store the MICR data in a tag field

in the TIFF file.  Summary judgment of noninfringement of claims 1-42 of the '965

patent is thus appropriate and should be granted.

> **B.** **ACS's SDU Systems Do Not Infringe the '965 Patent**
>
> > **1.** **The SDU Systems Do Not Store MICR Data in a Tag Field of a TIFF File**

The third limitation of claim 1 and third limitation of claim 20 of the '965 patent

require "the decoded magnetic ink coded data stored in a tag field in the TIFF file."  (Ex.

1 ('965 patent) at 54:39-40, 56:16-18.)  Just as ACS's systems without a MICR reader do

not satisfy this limitation, ACS's SDU systems do not satisfy this limitation:  ACS's SDU

systems do not store MICR data in a TIFF file.  (Ex. 6 (Kynch Declaration) at ¶6.)

The ACS SDU systems currently use an OPEX 3600 series scanner for imaging

checks.  (Ex. 6 (Kynch Declaration) at ¶4.)  The OPEX 3690i scanner in ACS's SDU

system is configured to output images of checks in the JPEG file format.  (*Id*.)  The JPEG

file format is not a TIFF; rather, the JPEG file format is standardized as the "ISO/IEC IS

10918-1 | ITU-T Recommendation T.81."  *See JPEG Homepage*,

http://www.jpeg.org/jpeg/index.html.  Furthermore, the JPEG file format does not include

tag fields.  As such, ACS's SDU systems do not store MICR data in a tag field in a TIFF

file.  Summary judgment of noninfringement of claims 1-42 of the '965 patent is thus

appropriate and should be granted.

### C.    ACS's Aetna System Does Not Infringe the '965 Patent

#### 1.    The Aetna System Does Not Store MICR Data in a Tag Field of a TIFF File

The third limitation of claim 1 and third limitation of claim 20 of the '965 patent require "the decoded magnetic ink coded data stored in a tag field in the TIFF file."  (Ex. 1 ('965 patent) at 54:39-40, 56:16-18.)  Again, just as ACS's systems without a MICR reader do not satisfy this limitation, ACS's Aetna system does not satisfy this limitation: ACS's Aetna system does not store MICR data in a TIFF file.  Summary judgment of noninfringement of claims 1-42 of the '965 patent is thus appropriate and should be granted.

JPMorgan's sole basis for its allegation of infringement with respect to this system is that it is "capable of infringing" the '965 patent.  (Ex. 3 (Exhibit AA to JPMorgan's Disclosure of Asserted Claims and Infringement Contentions in Response to ACS's Interrogatory Nos. 7-8) at 2, 5 ("A system capable of infringing is still infringing.").)  JPMorgan argues that ACS could write code that would use other available but unused code to store MICR data in a tag field in a TIFF file.  Importantly, as noted above, method claims (such as claim 1) are not infringed unless and until every step of the method is performed.  In other words, patent law does not recognize liability for being capable of infringing a method claim.  *See Ormco*, 463 F.3d at 1311 ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use.").  Accordingly, JPMorgan's "capable of infringing" theory cannot apply to method claims 1-19 and 39-40.  Furthermore, <u>with the exception of the Aetna system</u>, none of the non-SDU systems have "a magnetic ink reader" as required by the apparatus claims.  Accordingly, JPMorgan's "capable of

infringing" theory <u>can only possibly be relevant to the apparatus claims as applied to the accused Aetna system</u>.

Even with respect the Aetna system, however, JPMorgan's "capable of infringing" theory fails.  That is because, under Federal Circuit precedent, the "capable of infringing" analysis requires that an accused system be capable of infringing <u>without modification to the source code</u>.  And the Aetna system is not capable of infringing without such modifications.  As the Federal Circuit has explained:

> Software is a set of instructions, known as code, that directs a computer to perform specified functions or operations.  Thus, the software underlying a computer program that presents a user with the ability to select among a number of different options must be written in such a way as to enable the computer to carry out the functions defined by those options when they are selected by the user.  Therefore, although a user must activate the functions programmed into a piece of software by selecting those options, the user is only activating means that are already present in the underlying software.  <u>Otherwise, the user would be required to alter the code to enable the computer to carry out those functions.</u>  Accordingly, <u>in order to infringe</u> the '603 patent, the code underlying an accused fantasy football game must be written in such a way as to enable a user of that software to utilize the function of awarding bonus points for unusual plays such as out-of-position scoring, <u>without having to modify that code</u>.

*Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1117-18 (Fed. Cir. 2002) (emphasis added).

Even under JPMorgan's "capable of infringing" theory, a user would be required to modify the source code of the Aetna system (and re-compile the source code, assuming it would even compile) in order to have the "capability" to access the functions defined by the code.  Indeed, JPMorgan's infringement contentions are based on source code that is "commented out" and would need to be modified to infringe.  (Ex. 3 (Exhibit AA to JPMorgan's Disclosure of Asserted Claims and Infringement Contentions in Response to ACS's Interrogatory Nos. 7-8) at 5 ("[T]he reference to 'BUICAPI.h' in

'ACSchkscan.cpp' is 'commented out' so that when compiled, BUICAPI.h will not be compiled along with ACSchkcan.").)  In addition, the user would have to further modify the source code to call the allegedly "capable of infringing" functions for the software to actually be capable of infringing.  Contrary to JPMorgan's contentions, the driver source code provided to ACS is not capable of infringing.  Accordingly, JPMorgan's "capable of infringing" theory cannot apply to any ACS system, including the Aetna system, and summary judgment of noninfringement of claims 1-42 of the '965 patent is appropriate and should be granted.

> **D.**     **JPMorgan Offers No Evidence that the ACS Systems Satisfy Numerous Limitations of the Asserted Claims of the '965 Patent**

To establish that summary judgment is warranted, where the moving party does not bear the ultimate burden of persuasion at trial, it can either affirmatively negate the nonmovant's claim by providing affidavits, depositions or other evidence, or it can simply point out a lack of evidence for the other party on an essential element of that party's claim.  *Celotex*, 477 U.S. at 325.  JPMorgan offers no evidence that ACS's accused systems satisfy numerous additional limitations of the asserted claims of the '965 patent.  JPMorgan's sole contention to date that ACS's systems satisfy one or more limitations of claims 1, 3, 4, 5, 6, 7, 10, 11, 20, 22, 23, 24, 25, 26 and 30 is that "one of skill in the art would expect" the ACS Systems to satisfy these limitations.  (Ex. 4 (JPMorgan's SDU infringement contentions).)   However, JPMorgan admits that "the expectation of a person of ordinary skill in the art is an insufficient basis upon which to pursue an infringement claim" and that JPMorgan's infringement contentions use "unfortunate language."  (Discovery Conference of 10/5/2009 at 10.)  Given the fact that JPMorgan offers no evidence that ACS's systems satisfy limitations of claims 1, 3, 4, 5,

6, 7, 10, 11, 20, 22, 23, 24, 25, 26 and 30, summary judgment is appropriate on this ground as well.

>    **E.    Prosecution History Estoppel Forecloses Infringement Under the Doctrine of Equivalents**

Prosecution history estoppel applies in this case to preclude JPMorgan from asserting infringement of the '965 patent under the doctrine of equivalents.  The '965 prosecution history defines the "tagged image file format (TIFF) file" as the standardized format that was under the control of the Aldus Corporation at that time.  In distinguishing the prior art reference Behera, the applicants stated:

>    The Examiner may not be aware that the assignee of the present invention registered the new fields that were created specifically for the purposes of this invention with <u>the Aldus Corporation which developed the TIFF standard</u>.… <u>These fields were not available in the standard file formats</u>, contrary to the assertion in the Office Action.… At the time of the development of the instant inventions, <u>TIFF was an emerging standard</u> and it was not at all obvious that these fields should be added in the manner in which the inventors herein have done.  <u>The absence of any reference to TIFF by Behera is testimony to this fact</u>.

(Ex. 2 (Response to Office Action) at JA00591-593 (emphasis added).)  "[Prosecution history] estoppel also may be found on the basis of arguments made during prosecution of the application to secure the allowance of claims."  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1350 (Fed. Cir. 2002).  Accordingly, JPMorgan cannot attempt to re-capture such a broad interpretation of "tagged image file format (TIFF) file" under the doctrine of equivalents that would cover ACS's use of a JPEG file, or any file format other than the standardized TIFF format.

Additionally, in the prosecution history, applicants further distinguished the Behera prior art reference:

>    Hence, <u>the Behera reference lacks several elements of the present invention</u> which it in no way suggests to the ordinary skilled artisan

through a mere reading of the Behera disclosure…. [T]here is no <u>merging of data such as image data with decoded magnetic ink coded data (MICR data)</u> as in the present invention.  Further, this reference does not suggest the manner in which the MICR data is to be stored <u>in a TIFF file</u>, since this reference does not even suggest use of such files.  Still further, as noted previously, <u>the implication of the claims herein is that the merged MICR data and the image data necessarily are stored together with one another in the same physical memory</u>.  That is not true of the cited reference.

(Ex. 2 (Response to Office Action) at JA00592 (emphasis added).)  The prosecution history confirms that the "tag field in the TIFF file" must be merged into the same TIFF file and stored in the same physical electronic storage device as the image data.  Accordingly, JPMorgan cannot attempt to re-capture such a broad interpretation of "tag field in the TIFF file" under the doctrine of equivalents that would cover ACS's storage of MICR data in databases, files, or memory other than in the same TIFF file as the image data.  *See Allen Eng'g*, 299 F.3d at 1350.  Accordingly, prosecution history estoppel precludes JPMorgan from asserting infringement of the '965 patent under the doctrine of equivalents.

## VI.   CONCLUSION

For the foregoing reasons, ACS respectfully requests that summary judgment of non-infringement be granted.  First, summary judgment of noninfringement of claims 20-38 and 41-42 of the '965 patent on the systems without a MICR reader is proper because there is no genuine question of material fact that ACS's systems without a MICR reader do not have a "magnetic ink reader."  Second, summary judgment of noninfringement of claims 1-42 of the '965 patent on the systems without a MICR reader and the SDU systems is proper because there is no genuine question of material fact that ACS's systems do not store MICR data in a tag field in a TIFF file.  Third, summary judgment of noninfringement of claims 1-42 of the '965 patent on ACS's Aetna (AIM) system is

proper because there is no genuine question of material fact that ACS's systems do not store MICR data in a tag field in a TIFF file and because JPMorgan's "capable of infringing" theory fails as a matter of law.   Finally, summary judgment of noninfringement is appropriate because JPMorgan offers no evidence that the ACS Systems satisfy numerous limitations of claims 1, 3, 4, 5, 6, 7, 10, 11, 20, 22, 23, 24, 25, 26 and 30.

Dated:  December 1, 2009

**CONNOLLY BOVE LODGE & HUTZ LLP**

_____/s/ Kevin F. Brady_____
Collins J. Seitz, Jr.  (Bar. No. 2237)
Kevin F. Brady (Bar No. 2248)
1007 North Orange Street, P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 656-0116
cseitz@cblh.com
kbrady@cblh.com
*Attorneys for Defendants Affiliated Computer Services, Inc., and ACS State & Local Solutions, Inc.*

**OF COUNSEL:**
Mike McKool
Lewis T. LeClair
Theodore Stevenson, III
David Sochia
Bradley Caldwell
Phillip Aurentz
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

John Campbell
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Brett E. Cooper
McKool Smith, P.C.
One Bryant Park
47th Floor
New York, NY 10036
Telephone:  (212) 402-9400
Facsimile:  (212) 402-9444

## CERTIFICATE OF SERVICE

I, Kevin F. Brady, hereby certify that on December 1, 2009, I caused to be electronically filed a true and correct copy of ACS's OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,917,965 with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to registered counsel of record via e-mail.

I hereby further certify that on December 1, 2009, I caused a copy of ACS's OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,917,965 to be served on the following counsel of record by the manner so indicated:

*E-mail*
Ronald J. Schutz
Becky R. Thorson
Robins Kaplan Miller & Ciresi LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402


*/s/ Kevin F. Brady*_____
Kevin F. Brady (#2248)